**In re Deanna HAGAN and Shane Hagan, Plaintiffs**

v.

**FARMERS INSURANCE EXCHANGE, Defendant**

**In re Cynthia Ewald, Plaintiff**

v.

**Farmers Insurance Exchange, Defendant**

**In re James Mayfield, Plaintiff**

v.

**Farmers Insurance Exchange, Defendant**

Supreme Court Case No. 14SA266,
Supreme Court Case No. 14SA267,
Supreme Court Case No. 14SA313

Supreme Court of Colorado.

January 26, 2015

**430**

Attorneys for Plaintiffs Deanna Hagan, Shane Hagan, and Cynthia Ewald: Taussig & Taussig, P.C., John E. Taussig, III, Dustin E. Bergman, Boulder, Colorado, The Fowler Law Firm, LLC, Timms R. Fowler, Fort Collins, Colorado

Attorneys for Plaintiff James Mayfield: Richard M. Crane, Denver, Colorado, Earl & Earl, PLLC Collin J. Earl, Castle Rock, Colorado

Attorneys for Defendant: Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Max S. Gad, Denver, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 These original proceedings involve plaintiffs who filed separate actions against the same defendant, Farmers Insurance Exchange ("Farmers"), in Boulder County District Court. In each case, Farmers moved to change venue under C.R.C.P. 98(f)(2), alleging that a change would promote "the convenience of witnesses and the ends of justice." Farmers supported its motions with attorney affidavits that purport to demonstrate—based on Google Maps printouts alone—that the transferee court is a more convenient venue for the plaintiffs and their medical treatment providers. The trial court granted the motions in all three cases.

¶ 2 The plaintiffs asked this court to issue a rule to show cause why the orders granting a change of venue should not be vacated and venue transferred back to Boulder County. Their petitions under C.A.R. 21 exposed an inconsistency in how judges within the same district have applied Rule 98. Recognizing the need to promote a uniform application of the venue rules, we issued our rules to show cause.

¶ 3 We now make our rules absolute. We hold that the trial courts abused their discretion when they changed the venue in these cases. First, Boulder County District Court is a proper venue for all three cases; under C.R.C.P. 98(c)(1), the plaintiffs were allowed to file their complaints in the county of their choice because Farmers is a nonresident defendant. Second, the trial courts granted the motions without the requisite evidentiary support. The affidavits that Farmers submitted improperly focus on convenience to the plaintiffs and do not satisfy the standard set forth in *Sampson v. District Court*, 197 Colo. 158, 160, 590 P.2d 958, 959 (1979). *Sampson* requires a party seeking to change venue under Rule 98(f)(2) to support the motion with evidence indicating "the identity of the witnesses, the nature, materiality and admissibility of their testimony, and how the witnesses would be better accommodated by the requested change in venue." *Id.* Consequently, we direct the transferee courts to return the cases to Boulder County District Court.

## I. Facts and Procedural History

### A. *Hagan* and *Ewald*

¶ 4 In 2011, Deanna Hagan (a driver) and her mother-in-law, Cynthia Ewald (her passenger), were involved in a car accident in Weld County. A third party, Abdi Abdullahi, allegedly collided with them after running a red light. Both Hagan and Ewald were hurt in the collision and received medical treatment for their injuries. Hagan asserts that she incurred over $11,000 in medical expenses and lost income because of her injuries. Ewald asserts that she incurred almost $68,000 in medical expenses and also lost income because of her injuries.

¶ 5 Hagan and Ewald were insured by Farmers and had underinsured motorist ("UIM") coverage up to $250,000 and medical payments coverage up to $25,000. Abdullahi was insured by Young America Insurance

("Young America"), with a policy limit of $25,000. Young America paid Ewald $25,000 to settle her claim. It paid Hagan $15,000 to settle her claim and held $10,000 in reserve for additional exposure. Hagan and Ewald contend that they also were entitled to UIM benefits, which Farmers has refused to pay.

¶ 6 Represented by the same counsel, Hagan (together with her husband) and Ewald filed separate lawsuits against Farmers in Boulder County District Court on the same day. The lawsuits asserted claims for breach of contract, bad faith breach of insurance contract, and improper denial of insurance claims in violation of sections 10–3–1115(1)(a) and 10–3–1116(1), C.R.S. (2014). The Hagans also asserted a loss of consortium claim.

¶ 7 In both cases, Farmers filed a motion to change the venue to Arapahoe County District Court under Rule 98(f)(2), emphasizing that "[n]o potential witnesses have any connection to Boulder County." Farmers supported its motions with affidavits by its attorney, which contained Google Maps printouts and estimated distances and travel times for the plaintiffs and their potential witnesses.[1]

¶ 8 The trial courts granted Farmers' motions to change venue. The trial court in Ewald's case ruled first. It determined that Boulder County was not a proper venue. Then, noting that Ewald's medical treatment providers were "substantially closer" to the transferee court, it concluded that "a change in venue would promote the convenience of witnesses and the ends of justice." Relying on the order in *Ewald*, the trial court in the Hagans' case followed suit.

## B. *Mayfield*

¶ 9 In 2012, James Mayfield was involved in a car accident in El Paso County with an underinsured motorist, Mark Merriman, who allegedly failed to stop at a traffic light. Mayfield was hurt in the collision and received medical treatment for his injuries. He asserts that he incurred over $73,000 in medical expenses, had to drop out of school, and suffered a loss of earning capacity and substantial non-economic losses.

¶ 10 Mayfield was insured by Farmers and had UIM coverage up to $100,000. Merriman was insured by GEICO, with liability coverage up to $100,000. Mayfield filed a lawsuit against Merriman and settled it for $95,000. Claiming that his damages far exceeded $100,000, Mayfield then sought UIM benefits from Farmers. Farmers offered him $15,000 and refused to pay more.

¶ 11 Represented by different counsel than the Hagans and Ewald, Mayfield filed a lawsuit against Farmers in Boulder County District Court. In response to a motion to change venue, Mayfield's counsel filed an affidavit in which he stated that "[t]he reason that Plaintiff's Complaint was filed in Boulder was that Colorado's new Civil Access Pilot Project rules (CAPP) are not applicable in Boulder County District Court" and that he and his co-counsel "do not feel that this would be a good case to litigate under the CAPP rules."[2] Mayfield asserted claims for breach of contract and improper denial of insurance claims in violation of sections 10–3–1115(1)(a) and 10–3–1116(1). Mayfield's case was assigned to the same trial judge as the Hagans' case.

¶ 12 Represented by the same defense counsel, Farmers filed a motion to change

1. Google Maps is a software application that provides step-by-step driving directions (with street maps) from one location to another, together with the distance and estimated travel time between the two locations. *See* Google Maps, https://maps.google.com (last visited Jan. 23, 2015).

2. The CAPP Rules apply to certain business actions in district court. Their purpose is to streamline litigation and "to decrease the burden of civil litigation on both litigants and courts, increase access to judicial dispute resolution, and protect the civil trial as a valuable institution."

*See* Colorado Civil Rules Pilot Project, *A History and Overview of the Colorado Civil Access Pilot Project Applicable to Business Actions in District Court*, available at http://www.courts.state.co.us/userfiles/file/Court_Probation/Educational_Resources/CAPP%20Overview%20R8%2014%20(FINAL).pdf (last visited Jan. 23, 2015). Under Chief Justice Directive 11–02 (amended July 2014), the CAPP Rules apply to designated cases in the First District (Jefferson and Gilpin Counties), Second District (Denver County), Seventeenth District (Adams County only), and Eighteenth District (Arapahoe County only).

the venue to El Paso County District Court under Rule 98(f)(2), again emphasizing that "[n]o potential witnesses have any connection to Boulder County." Farmers once more supported its motion with an attorney affidavit with attached Google Maps printouts and estimated distances and travel times for the plaintiff and his potential witnesses. The trial court granted the motion.[3]

## II. Original Jurisdiction

¶ 13 Under C.A.R. 21, this court may exercise its original jurisdiction to review the trial courts' orders because they relate to venue. *See City of Colo. Springs v. Bd. of Comm'rs,* 147 P.3d 1, 2 (Colo.2006). Venue refers to the place of trial or "the locality where an action may be properly brought." *State v. Borquez,* 751 P.2d 639, 641 (Colo.1988). Review is appropriate under C.A.R. 21 because "[i]ssues involving venue directly affect the trial court's jurisdiction and authority to proceed with a case." *City of Colo. Springs,* 147 P.3d at 2 (citing *Millet v. Dist. Court,* 951 P.2d 476, 477 (Colo. 1998)). Further, review of a venue determination serves to avoid the delay and expense involved in a re-trial should this court deem venue improper. *See id.* (citing *Bd. of Cnty. Comm'rs v. Dist. Court,* 632 P.2d 1017, 1020 (Colo.1981)).

## III. Analysis

¶ 14 Generally, a plaintiff is entitled to choose the place of trial when venue in more than one county would be proper. *7 Utes Corp. v. Dist. Court,* 702 P.2d 262, 266 (Colo.1985) (characterizing it as a plaintiff's "right"); *accord Tillery v. Dist. Court,* 692 P.2d 1079, 1083–84 n.9 (Colo.1984) ("[T]he plaintiffs, absent C.R.C.P. 98(f)(2) concerns, are entitled to their choice of venue."). There is a "strong presumption" in favor of

that choice. *UIH–SFCC Holdings, L.P. v. Brigato,* 51 P.3d 1076, 1078 (Colo.App.2002).

¶ 15 The party seeking a change of venue bears the burden of proving the right to a change. *Cliff v. Gleason,* 142 Colo. 500, 502, 351 P.2d 394, 396 (1960) (citing *Fletcher v. Stowell,* 17 Colo. 94, 97, 28 P. 326, 327 (1891)). A court may change the place of trial "on good cause shown" under two circumstances: "(1) When the county designated in the complaint is not the proper county; (2) When the convenience of witnesses and the ends of justice would be promoted by the change." C.R.C.P. 98(f). A trial court's decision on a motion to change venue is reviewed for an abuse of discretion. *Sampson,* 197 Colo. at 159–60, 590 P.2d at 959. If the trial court grants a motion to change venue despite a defendant's failure to show that venue should be changed under the standard delineated in *Sampson,* this court will return the action to the original venue for trial. *Tillery,* 692 P.2d at 1084.

¶ 16 To assess whether the trial courts abused their discretion in granting Farmers' requests for a change of venue, we ask two questions. First, was venue in Boulder County District Court proper? The answer to this question is yes. Second, can a defendant seeking a change of venue under Rule 98(f)(2) based on witness convenience and the ends of justice satisfy its burden by submitting an affidavit that focuses on the proximity of the respective venues to the plaintiff and the plaintiff's possible witnesses? The answer to this question is no.

## A. Rule 98(f)(1)

¶ 17 We first assess whether Boulder County is a "proper county" for these cases for purposes of Rule 98(f)(1) and conclude that it is.[4]

---

3. The parties each submitted district court orders to support their positions. Although the facts of the cases vary, it is clear that judges within Boulder County District Court have not taken a consistent approach in resolving motions to change venue. Some judges have routinely approved motions to change venue based on affidavits like the ones Farmers submitted here. Other judges have denied motions to change venue under similar circumstances.

4. Because the orders in the *Hagan* and *Ewald* actions declare to the contrary, we address this issue even though Farmers concedes this point and does not challenge our precedent allowing a plaintiff to designate any county under Rule 98(c)(1) when a defendant is a nonresident.

¶ 18 Our inquiry begins with the language of Rule 98(c), which presents a series of alternative, and equally appropriate, venues in a tort, contract, or other action. At issue here, subsection (1) provides:

> [A]n action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action, or in the county where the plaintiff resides when service is made on the defendant in such county; or *if the defendant is a nonresident of this state*, the [action] may be tried in any county in which the defendant may be found in this state, *or in the county designated in the complaint,* and if any defendant is about to depart from the state, such action may be tried in any county where plaintiff resides, or where defendant may be found and service had.

C.R.C.P. 98(c)(1) (emphasis added).[5]

¶ 19 Here, it is undisputed that Farmers has its principal place of business in California and is not a resident of Colorado. Consequently, pursuant to the highlighted language above, the Hagans, Ewald, and Mayfield were permitted to designate any county in their complaints, including Boulder County. *See Denver Air Ctr. v. Dist. Court,* 839 P.2d 1182, 1184–85 (Colo.1992) ("The language of [Rule 98(c)] has been interpreted to permit trial of an action in the county of plaintiff's choice where no defendant is a resident of Colorado." (citing *Int'l Serv. Ins. Co. v. Ross,* 169 Colo. 451, 462, 457 P.2d 917, 923 (1969))); *see also* Stephen

A. Hess, 5A *Colorado Practice: Handbook on Civil Litigation* § 1.5 (2014) ("If no defendant is a resident, the plaintiff may choose any county to name as the place of venue.").

¶ 20 However, when the trial court granted Farmers' motion for a change of venue in Ewald's action, it deemed "Plaintiffs' designated venue of Boulder County" to be "improper under C.R.C.P. 98(c)." It reached this conclusion after quoting only a portion of Rule 98(c)(1), which omitted the key phrase "or in the county designated in the complaint." Following suit eight days later, the trial court in the Hagans' action incorporated the legal analysis in the *Ewald* order into its own order granting Farmers' motion for a change of venue—noting that it was "persuasive authority because the Court agrees with its logic."

 ¶ 21 The trial courts in the *Hagan* and *Ewald* lawsuits abused their discretion in holding that Boulder County was not a proper venue. Because Farmers is a nonresident of Colorado, the plaintiffs were permitted to designate any county in their complaints under Rule 98(c)(1). In choosing Boulder, the plaintiffs may well have engaged in "forum shopping" and ventured away from where these cases seem to have their roots. But Rule 98(c)(1) does not restrict the plaintiff's choice of venue when the defendant is a nonresident,[6] and potential witnesses need not have a connection to Boulder, despite Farmers' insistence to the contrary.[7]

---

5. We cannot ascertain from the record whether additional venues might be appropriate. For instance, Rule 98(c)(2) provides that "an action upon contract may also be tried in the county where the same was to be performed." C.R.C.P. 98(c)(2). Rule 98(c)(4) provides that "[a]n action upon a contract for services may also be tried in the county in which the services were to be performed." C.R.C.P. 98(c)(4). And Rule 98(c)(5) provides that "[a]n action for tort may also be tried in the county where the tort was committed." C.R.C.P. 98(c)(5). We need not analyze these alternative venue provisions today, however, because the parties have not relied upon them.

6. A plaintiff's ability to designate any county under Rule 98(c)(1) does not, of course, mean that his or her venue choice is unfettered. We made clear in *Department of Highways v. District Court,* 635 P.2d 889, 891–92 (Colo.1981), and *Bacher v.*

District Court, 186 Colo. 314, 319, 527 P.2d 56, 59 (1974), that a plaintiff's venue choice is subject to change under Rule 98(f)(2) when the defendant's motion to change venue is well supported.

7. Farmers repeatedly points out that the *Hagan* and *Ewald* cases have no ties to Boulder, beyond the plaintiffs' counsel having offices there. Yet, in seeking to avoid Boulder County as a venue, Farmers seems to be engaging in the same type of behavior that it condemns. Farmers itself does not establish a connection between its own venue choices and the parties or the underlying events in the *Hagan* and *Ewald* actions. This deficiency may stem in part from the continuing debate over the plaintiffs' county of residence—a debate that the plaintiffs did not resolve during briefing to this court. The complaints allege that the Hagans live with Ewald and are residents of Denver County; however, Farmers states in its

## B. Rule 98(f)(2)

¶ 22 We next assess whether a change of venue would promote "the convenience of witnesses and the ends of justice" as required by C.R.C.P. 98(f)(2)—focusing on the type of evidence that a movant must present. We conclude that the attorney affidavits that Farmers presented to the district court were insufficient under *Sampson* and its progeny.

¶ 23 In *Sampson*, this court made clear that the party moving to change venue under Rule 98(f)(2) must show, "through affidavit or evidence, the identity of the witnesses, the nature, materiality and admissibility of their testimony, and how the witnesses would be better accommodated by the requested change in venue." 197 Colo. at 160, 590 P.2d at 959; *see also Ranger Ins. Co. v. Dist. Court*, 647 P.2d 1229, 1231 (Colo.1982) (reiterating this principle); *Dep't of Highways*, 635 P.2d at 891 (same).

¶ 24 This standard consolidates the varying requirements imposed in earlier cases, which we cited in *Sampson*. *See, e.g., Enyart v. Orr*, 78 Colo. 6, 11, 238 P. 29, 32 (1925) (emphasizing that "[a]ffidavits in support of motions for change of venue should state facts"); *Corson v. Neatheny*, 9 Colo. 212, 214–15, 11 P. 82, 84 (1886) (upholding denial of motion to change venue where supporting affidavit contained information that would not have been admissible); *Denver & R.G.R. Co. v. Cahill*, 8 Colo.App. 158, 163, 45 P. 285, 286 (1896) (labeling as "insufficient" an affidavit that "did not state what any witness would testify to, or that the testimony of any witness would be material to any issue in the case"); *see also Hills v. La Due*, 5 Colo.App. 248, 249, 38 P. 430, 430–31 (1894) (stating that affidavit in support of motion to change venue should contain "[t]he facts to which the witness whose convenience it was desired to subserve would testify" and, since no answer had been filed and no defense disclosed, "the facts constituting the defense").

¶ 25 Conclusory statements do not satisfy this standard. In *Sampson*, for ex-

ample, this court explained that it was not enough for the movant to assert that the designated venue was remote and that witnesses would be inconvenienced. 197 Colo. at 160, 590 P.2d at 959. And in *Ranger Insurance Co.*, this court concluded that the record was too limited to support a change of venue when the movant summarily asserted that another venue would be more convenient for the witnesses and would promote the ends of justice. 647 P.2d at 1231.

¶ 26 When the movant makes the requisite showing, the party opposing the change "must at least balance the showing made by the moving party" or the court should grant the motion. *Dep't of Highways*, 635 P.2d at 891. Farmers has not made the requisite showing in these cases, as the attorney affidavits that it submitted in support of its motions to change venue do not satisfy the *Sampson* standard.

¶ 27 In all three cases, Farmers' motions relied on affidavits by its attorney. Those affidavits primarily analyze (1) the distance the plaintiffs and their medical treatment providers would have to travel to get to the proposed transferee court, as compared to the original venue, and (2) the approximate travel time to each venue. Because these travel distances and times are generally shorter for the proposed transferee court, Farmers contends that the transferee court is necessarily a more convenient venue under Rule 98(f)(2). We disagree.

¶ 28 The problem lies not in who provided the affidavits, but in their contents. The deficiency is twofold.

¶ 29 First and foremost, Farmers' affidavits focus inordinately on the convenience of the non-moving party. Farmers calculates (and compares) the distance and estimated travel time, without traffic, from the plaintiffs' homes to the Boulder County and Arapahoe County courthouses (in the *Hagan* and *Ewald* actions) and to the Boulder County and El Paso County courthouses (in the

motions to change venue that the address provided after the signature block in the complaints corresponds to Arapahoe County through various websites. (By contrast, Farmers has shown a

connection between Mayfield's action and El Paso County. The accident occurred there, Merriman is a resident there, and some of Mayfield's medical treatment providers have offices there.)

*Mayfield* action).[8] But a plaintiff's convenience is not a defendant's concern. A defendant may not use a plaintiff's residential address (or a plaintiff's professional address) against him or her to attack a venue that is specifically permitted by Rule 98.

¶ 30 Second, to satisfy the standard set forth in *Sampson*, the affidavits must contain three categories of pertinent information: (1) "the identity of the witnesses"; (2) "the nature, materiality and admissibility of their testimony"; and (3) "how the witnesses would be better accommodated by the requested change in venue." *See Sampson*, 197 Colo. at 160, 590 P.2d at 959. No category is determinative; the trial court must assess the totality of the circumstances to assess whether a change of venue is necessary and appropriate.

¶ 31 We evaluate each category in turn. We do so against the backdrop of our case law, which provides examples of what types of evidence will (and will not) support a Rule 98(f)(2) motion, as well as guidance on the types of circumstances that may justify a change of venue. *Department of Highways*, for instance, provides an exemplar of an affidavit that contains the requisite information. There, a motorist who was injured in an accident due to a hole in the pavement on an exit ramp filed a negligence action against the Department of Highways in Denver County. 635 P.2d at 890. The Department filed a motion to change venue to Kit Carson County, which it supported with an affidavit by its assistant maintenance superintendent, who investigated the accident. *Id.* at 890–91. The affidavit listed the names and addresses of 15 witnesses whom the Department (not

the plaintiff) intended to call at trial—six of whom were employees and all of whom resided in Kit Carson County. *Id.* at 891. The affidavit contained a brief description of their testimony. *Id.* It averred the Department operated with very few employees due to budget limitations and it would be impossible to maintain the local roads with these employees attending a trial in Denver, over 150 miles away; thus, the inconvenience was to the Department and not to the plaintiff. *Id.* We deemed this affidavit sufficient to justify a change of venue. *Id.* at 890–92.

## 1. The Identity of the Witnesses

¶ 32 We begin by evaluating whether Farmers' attorney affidavits sufficiently set forth "the identity of the witnesses."

¶ 33 Farmers lists the plaintiffs' own names and addresses, together with the names and addresses of their "treating medical providers" and the physicians who performed their independent medical evaluations.[9] Farmers extracted this information from the plaintiffs' demand letters, which it attached to the affidavits. As explained above, the party plaintiffs' convenience is immaterial. Also, identification of the plaintiffs' medical treatment providers implicates the third prong, namely how witnesses would be affected.

¶ 34 The affidavits largely ignore Farmers' own employees, as well as potential third-party witnesses. Only the affidavit filed in Ewald's case—which lists "Heidi Hanson, the most recent claims handler on Plaintiff's claim"—identifies any of Farmers' own employee-witnesses by name.[10] And only the

8. Farmers calculates that the Hagans and Ewald (who live together) would have to travel an additional 31.9 miles, or 37 minutes without traffic, to get to Boulder County than to Arapahoe County. It calculates that Mayfield would have to travel an additional 93.9 miles, or 89 minutes without traffic, to get to Boulder County than to El Paso County.

9. Using their office addresses as the starting point, Farmers calculates that 5 of Hagan's medical treatment providers and 10 of Ewald's providers would have to travel an additional 23.6 to 40.4 miles, or 24 to 41 minutes without traffic. It calculates that the doctor who performed an independent medical examination of Hagan and

Ewald would have to travel an additional 9.8 miles, or 10 minutes without traffic. In addition, Farmers notes that 10 of Mayfield's medical treatment providers are located in El Paso County, with the remaining 3 in Teller County. It calculates that these providers would have to travel an additional 76.5 to 97.6 miles, or 71 to 93 minutes without traffic.

10. Farmers advises in Ewald's case that Hanson's office is in Denver County and that she would have to travel an additional 29.6 miles, or 32 minutes without traffic. The affidavit filed in the Hagans' case references "the Farmers claims handlers" generally, without naming them. Identifying information is similarly absent in the

affidavit in Mayfield's case lists a third-party witness—"the underlying tortfeasor, Mark Merriman." [11]

¶ 35 Furthermore, Farmers lists numerous business names, without specifying a doctor or corporate representative. [12] Although the demand letters (which contain some additional identifying information) are also attached in support of the motions, complete information for each witness should be apparent from the face of an affidavit (or other evidence) to facilitate the court's evaluation of the motion to change venue.

¶ 36 Because Farmers focuses almost exclusively on the plaintiffs and their medical treatment providers and omits its own potential witnesses, and because Farmers often provides business names only, its affidavits do not identify the witnesses sufficiently to justify a change of venue under Rule 98(f)(2).

### 2. The Nature, Materiality, and Admissibility of the Witnesses' Testimony

■ ¶ 37 We next consider the second prong of the *Sampson* standard—whether Farmers' attorney affidavits address the nature, materiality, and admissibility of the potential witnesses' testimony. This requirement ensures that a motion to change venue does not engender a meaningless "battle of numbers," in which the parties compete by presenting the reviewing court with long lists of possible witnesses located in their preferred venues.

¶ 38 This court has applied this requirement (and deemed it fulfilled) in cases such as *Department of Highways*. See 635 P.2d at 890–92. But we have not yet expanded on what it takes to satisfy this requirement.

We do so today, turning to commentary on 28 U.S.C. § 1404 (2014) (the federal counterpart to Rule 98) for guidance.

■ ¶ 39 The party seeking a change of venue must provide at least "a general summary" of what the key witnesses' testimony will cover. See 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (3d ed.2010). That description should provide the reviewing court with enough information to understand whether the witnesses are important or peripheral. *Id.* (noting that the description should allow the trial court "to determine what and how important their testimony will be"). Consider, for example, a case in which one key nonparty witness is located in or near the original venue and another key nonparty witness is located in or near the proposed venue. The description should allow the court to make an informed judgment as to their respective importance. In addition, if the admissibility of a witness's testimony is in question (e.g., because it contains hearsay), the affidavit identifying that witness should briefly explain why his or her testimony will likely be admissible.

¶ 40 We recognize that motions to change venue are generally filed at the beginning stages of litigation, before the parties have engaged in discovery. But this timing should not preclude a movant from providing information at this most basic level.

¶ 41 Because Farmers' affidavits do not contain any information at all on the nature, materiality, and admissibility of the potential witnesses' testimony, they do not meet the second prong of the *Sampson* standard and do not justify a change of venue under Rule 98(f)(2). [13]

---

affidavit filed in Mayfield's case, which states only that "[n]one of the Farmers personnel who handled Plaintiff's claim work in Boulder County."

11. Farmers calculates that Merriman would have to travel an additional 87.9 miles, or 91 minutes without traffic, from his home.

12. In the *Hagan* action, Farmers lists New Body Chiropractic, Spine One, and Park Meadows Imaging. In the *Ewald* action, Farmers lists Koop Chiropractic, New Body Chiropractic, Swedish

Medical Center, Spine One, Park Meadows Imaging, The Surgery Center at Lone Tree, and Colorado Spine and Orthopedic Rehabilitation Center. And in the *Mayfield* action, Farmers lists Memorial Hospital Colorado Springs, Pikes Peak Regional Hospital, and Southwest Diagnostic.

13. This deficiency may stem from the fact that the affidavits focus on the plaintiffs and their medical treatment providers. Because they are not Farmers' own witnesses and may not support Farmers' theory of defense, Farmers may not be aware of the nature or materiality of their testimony or of potential admissibility issues. Even

### 3. How the Witnesses Would Be Affected

¶ 42 Last, we assess whether Farmers' attorney affidavits establish "how the witnesses would be better accommodated by the requested change in venue." In other words, how will the change affect the witnesses?

¶ 43 The affidavits do not establish how any witnesses would be better accommodated by the requested change of venue. Distance and travel time logically factor into convenience, but they are not dispositive. Farmers' assertion that trial in Boulder County would be inconvenient for witnesses is largely speculative.

¶ 44 Courts have expressed suspicion when a defendant advocates for the convenience of a plaintiff's witnesses.[14] We share their apprehension. While the convenience of the plaintiffs' witnesses is relevant in assessing convenience under Rule 98(f)(2), the moving party should point to more than distance: Do the professional witnesses, such as treatment providers, actually object to the travel involved? If so, why?

¶ 45 The affidavits do not demonstrate that a single witness actually stated that it would be inconvenient for him or her to attend a trial in Boulder County, as compared to the transferee courts. Witness affidavits to this effect would help. *See Tillery*, 692 P.2d at 1081–83 (affirming that Denver County District Court had discretion to grant motion to change venue to Summit County, when motion was supported by witness affidavits stating that it would be inconvenient for them to appear in Denver); *cf. Lopez v. Am. Standard Ins. Co.*, No. 14CV30476 (Colo.Dist.Ct. Aug. 7, 2014) (Order: Reply in Support of Motion to Change Venue) (considering that three of plaintiff's witnesses provided an affidavit stating that Weld County would not be more convenient than Boulder County in denying insurance company's motion to change venue under Rule 98(f)(2)); *see also Jacobs v. Banks Shapiro Gettinger Waldinger & Brennan, LLP*, 9 A.D.3d 299, 780 N.Y.S.2d 582, 583 (2004) (emphasizing that defendants "did not even indicate that they had contacted the nonparty witnesses, much less identify the specific inconveniences which might be incurred by the witnesses," rendering their moving papers insufficient as a matter of law).

¶ 46 It is also noteworthy that the affidavits do not contain the home addresses for the potential witnesses, except for the plaintiffs themselves. Without requiring that a movant include both work and home addresses for each witness identified, we note the possibility that the witnesses' homes might be closer to Boulder County, thereby rendering that venue more convenient for those witnesses traveling from home, not the workplace.

¶ 47 Further, it does not appear that the plaintiffs even intend to call the many witnesses enumerated in the affidavits, or (on the flip side) that Farmers' witness list is complete. By way of example, Mayfield advises the court that he does not intend to call the majority of the medical treatment providers that Farmers lists in its affidavit. He also notes that the expert witnesses whom he intends to call—who are not on Farmers' list—are closer to Boulder County than to El Paso County.

¶ 48 Finally, distance and travel time—while relevant—constitute a nebulous benchmark.[15] Granted, this court has not hesitated to find inconvenience in cases involving significant travel differentials in the 150–mile to 200–mile range. *See Dep' t of Highways*, 635

---

so, initial disclosures should permit Farmers to provide the trial courts with some guidance regarding what significance it understands the plaintiffs' witnesses to have. Certainly, Farmers should be able to proffer information about anticipated defense witnesses.

**14.** *See, e.g., Rollinson v. Pergament Acquisition Corp.*, 228 A.D.2d 186, 643 N.Y.S.2d 91, 91 (1996) (noting that the court was "skeptical of any expression of concern by defendant for [the convenience of] plaintiff's treating physician");

*McConville v. Makita U.S.A., Inc.*, 204 A.D.2d 206, 612 N.Y.S.2d 31, 31 (1994) (stating that the convenience of the plaintiff's witnesses "should be a matter of plaintiff's, not defendant's, solicitude").

**15.** Farmers' own characterizations reveal the arbitrariness of a numbers-based approach. Farmers alternately labels a 44.9–mile difference in Mayfield's case "enormous," "huge," and "great," but then refers to a "mere" 12– and 29–minute difference.

P.2d at 891–92 (stating that the trial court should have considered the 150–mile distance between Kit Carson County and Denver County in assessing convenience for the witnesses); *Bacher*, 527 P.2d at 59 (vacating an order denying a motion to change venue, where the counties were remote and material witnesses would have had to travel approximately 200 miles to get to the designated venue). But when two closely situated counties are under scrutiny, no bright line separates convenience from inconvenience. For instance, assuming that the witnesses listed in Farmers' attorney affidavit in Mayfield's case actually will testify, where does a 76.5– to 97.6–mile difference fall on the convenience spectrum?

¶ 49 The split within the Boulder County District Court illustrates that no universal notion of convenience exists. The trial courts found Boulder County to be inconvenient here, but other judges in the same district have deemed extra travel time within the greater Denver area to be less consequential.

¶ 50 Because Farmers' evidence does not establish that the witnesses would be better accommodated by a move to another county, it does not justify a change of venue under Rule 98(f)(2).

#### 4. The Ends of Justice

¶ 51 In addition to the convenience arguments advanced through the attorney affidavits, Farmers asserts that a change of venue would promote "the ends of justice" by (1) ensuring that "a jury of the majority of the vicinage of the witnesses pass upon their credibility"; (2) deterring plaintiffs from forum shopping to avoid CAPP districts; and (3) reducing witness costs for which Farmers will be responsible if it loses at trial. We reject these arguments.

¶ 52 "Vicinage" means "vicinity" or "proximity." *Black's Law Dictionary* 1702 (9th ed. 2009). In the context of juries, it is a somewhat anachronistic term referring to "the locality from which jurors will be

drawn." 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.1 (3d ed. 2007 & Supp. 2014). In criminal cases, for instance, jurors must generally "be selected from a geographical district that includes the locality of the commission of the crime," without extending "too far beyond the general vicinity of that locality." *Id.* There is no corresponding vicinage requirement in civil cases. Moreover, the venues under consideration here are all metropolitan areas along the Front Range; therefore, any difference in the jury's composition would likely be minimal.

¶ 53 Farmers' CAPP and costs-based arguments are likewise without merit. We decline to impose hurdles on a plaintiff's choice of venue that do not exist in the plain language of Rule 98 and section 13–16–122, C.R.S. (2014) ("Items includable as costs").[16]

### IV. Conclusion

¶ 54 "[C]onsistent with specific venue provisions, courts should attempt to accommodate the litigants and their witnesses to the greatest extent possible." *Evans v. Dist. Court*, 194 Colo. 299, 303, 572 P.2d 811, 814 (1977). Still, courts must do so within established parameters. Thirty-six years ago, in *Sampson*, this court outlined certain evidentiary requirements for a motion to change venue. The trial courts granted Farmers' motions to change venue without insisting upon the critical information that *Sampson* requires. It was an abuse of discretion for the trial courts to order a change of venue without adequate supporting affidavits or an evidentiary hearing. *See Sampson*, 197 Colo. at 160, 590 P.2d at 960; *accord Ranger Ins. Co.*, 647 P.2d at 1231. Consequently, we now make our rules to show cause absolute.

¶ 55 We hold that the trial courts abused their discretion when they changed the venue in these cases. First, Boulder County District Court is a proper venue for all three cases; under Rule 98(c)(1), the plaintiffs were allowed to file their complaints in the

16. Besides, CAPP would not apply to Mayfield's action in either Boulder County or El Paso County. It is clear from his attorney's affidavit that Mayfield filed his case in Boulder County District Court to avoid CAPP. But the transferee court, El Paso County Court, is not subject to CAPP either. *See supra* n.2.

county of their choice because Farmers is a nonresident defendant. Second, the trial courts granted the motions without the requisite evidentiary support. The affidavits that Farmers submitted improperly focus on convenience to the plaintiffs and do not satisfy the standard set forth in *Sampson*, 197 Colo. at 160, 590 P.2d at 959. *Sampson* requires a party seeking to change venue under Rule 98(f)(2) to support the motion with evidence indicating "the identity of the witnesses, the nature, materiality and admissibility of their testimony, and how the witnesses would be better accommodated by the requested change in venue." *Id.*

¶ 56 We direct the transferee courts to return the cases to Boulder County District Court.